No. 2882.

## BILL BROOKIN v. THE STATE.

1. JURISDICTION—PRACTICE.—A person accused of crime committed in this State is amenable in the courts of this State notwithstanding he was kidnapped in another State or Territory and brought thence against his will and without lawful authority.

2. PRACTICE—CONTINUANCE.—Refusal of a continuance asked on account of absent witnesses was relied upon as cause for new trial, and the refusal of a new trial is assigned for error; but it is apparent of record that due diligence was not used to obtain the testimony of the absent witnesses, and it is not apparent that their testimony would probably be true, if adduced as alleged. *Held*, no cause for reversal.

3. THEFT—EVIDENCE.—In a trial for horse theft a State's witness testified that, soon after the theft, he went to a certain place and there found the stolen horses in the possession of the defendant and two other men. Over objection by the defense the witness was permitted to make the further statement that he went to the said place for the purpose of locating the defendant, in compliance with the request of the sheriff of the county. *Held* that this explanation was proper and legitimate for the purpose of repelling any inference to the discredit of the witness.

4. PRACTICE—CROSS EXAMINATION.—The extent and character of a cross examination is left largely to the discretion of the trial judge, and ordinarily will not be revised on appeal—no abuse of judicial discretion nor injury to the accused being apparent of record.

APPEAL from the District Court of Wilbarger. Tried below before the Hon. P. M. Stine.

The conviction in this case was for the theft of two horses, and a term of seven years in the penitentiary was the punishment assessed against the appellant. One of the horses was alleged to be the property of Albert Carter, and the other to be the property of Margaret Wages.

Albert Carter was the first witness for the State. He testified that he lived in the town of Vernon, Wilbarger county, Texas. On the morning of March 27, 1887, he put his certain black horse —an animal fifteen hands high, branded SS on the left shoulder —in the Tom Jones pasture, about half a mile from the town of Vernon. He went to the said pasture on the morning of the twenty-eighth, but failed to find the horse. At the same time he missed from that pasture a certain sorrel horse, fifteen hands high, branded SS on the left shoulder, which said horse was the property of his neice, Hettie Wages, but was in the care and custody of Dave Carter, the witness's brother. After a short search the witness and his brother Dave, who was with him, found where the pasture fence had been torn down, and some horses taken out. The ground was too dry at the time to allow the witness and his brother to track the animals. Witness had never seen either of the said horses since the evening of the said March 27. The animals were both gentle, ranged near the town of Vernon, and were never known to stray. No person had the witness's consent to take either of these animals.

John H. Davidson, testified for the State, that he lived at Vernon, Wilbarger county, Texas. He was in the town of Quanah on the twenty-seventh of March, 1887. On the morning of the twenty-eighth he went from Quanah to Vernon at the request of Sheriff Board, of Baylor county, for the purpose of locating the defendant. Getting dinner at Spencer's house on that day he proceeded to Addison's house, on Boggy creek, about fifteen miles southeast from Vernon, where he found the defendant and Pet Rose and Dick Shepherd. As soon as they saw witness they ran off up the branch, but stopped when they discovered who the witness was. They then returned to Addison's house and the witness ate supper with them. Some time after supper, the defendant riding the sorrel horse described in the indictment, and Pet Rose riding the Albert Carter black horse, and Dick Shepherd riding a gray pony left Addison's, saying that they were going to ride as far as the road was "cut." Witness knew the horses well and knew them to be the horses described in the indictment. Pet Rose was a heavy set

man, with light complexion and reddish hair and beard. Dick Shepherd was a somewhat taller man than Rose and had red hair and beard. On his cross examination the witness said that he had no regular occupation, but gambled when he could get a game, and had a pecuniary interest in a dance house in Clarendon, Baylor county.

Charles Quillan testified, for the State, that he lived in Hemphill county, Texas, but was in Hale county, about one hundred and fifty miles from Vernon, in April, 1887. Early in that month he saw the defendant and two men who corresponded with the description of Rose and Shepherd as given by the witness Davidson. They were in Hale county, Texas, defendant riding a sorrel horse about fifteen hands high and one of the other men riding a black horse of about the same height. Witness did not then observe the brands on the said horses, but about a month later he again saw them on a ranch near the New Mexico line. Each of the said horses had then been recently branded By on the left thigh, and the old brand SS had been recently "barred through." The third man, when witness saw the parties in Hale county, was riding a gray pony. Defendant told witness in Hale county that he had come from near Seymour, in Baylor county.

W. P. Bean testified, for the State, that he lived in Hale county in April, 1887. Early in that month the defendant, riding the sorrel horse described in the indictment, accompanied by a heavy set man with reddish hair and beard, riding the black horse described in the indictment, and by a tall, slender man with reddish hair and whiskers, riding a gray pony, came to the witness's house in said Hale county. Witness, who had previously lived in Vernon, knew the said horses, and recognized them on sight. The Carter SS brand on the left shoulder of the sorrel and black horses had been recently "barred through," and each animal was fresh branded By on the left hip.

Dave Carter, the custodian of the sorrel horse, and Tom Jones, the proprietor of the pasture from which they were taken, testified that no person had their consent to take the said horses from the said pasture.

In his application for continuance the defendant alleged that he would prove by two absent witnesses that, a short time after the property mentioned in the indictment was stolen, Charles Luts was seen in possession of the same, saying that he had

stolen the same to get even with the Carter boys for property that the Carter boys had stolen from him; and on the further ground that he could prove by Tom Bragg, one of the absent witnesses, that he saw said Charles Luts take said horses.

In the same application, the defendant undertook to account for his not having used the proper diligence by showing that there was great prejudice against him in Wilbarger county at the time he was first arrested, so much so that he could not get counsel, and that he was in jail, and that the sheriff in no way informed him what was against him, and kept him in jail all the time.

As to some of the facts set up for the continuance, the district attorney filed an affidavit of the sheriff (to show that defendant never made an effort to employ counsel so he could get out process for his witnesses), who, in his affidavit, stated that D. R. Britt, an attorney at law in Wilbarger county, was to see Brookin, the appellant, and that he, Brookin, refused to employ him.

To contradict this, D. R. Britt was sworn, who testified that he was in the jail and defendant had so much pressure against him that he, said Britt, demanded a cash fee and defendant did not have it to pay, and on account of so much influence being against defendant he would not take his case without the cash fee, and that he refused to get out process, and that, at that time, there were even one dozen cases against defendant, and said Britt did not tell him what they were for. It was contended that under the circumstances defendant ought not to be held to strict diligence.

*McCall, Sitterly* and *Barrett & Stine,* for appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. I. It can not avail the defendant against this prosecution that he was arrested by the sheriff of Wilbarger county, Texas, in the Indian Territory, without lawful authority, and brought into this State and confined in the jail of said Wilbarger county to be tried for the offense of which he has been convicted. A person accused of crime committed in this State may be tried by the courts of this State for such crime, although he may have been kidnapped in another State or Territory, and brought from thence to this State against his will

and without lawful authority.   (State of Iowa v. Ross and Mann, 21 Iowa, 467; Dow's case, 18 Penn. State, 37; Ker v. Ill., 9 Crim. Law Mag., 201, and other decisions there cited.)

II.   There was no error in refusing defendant's application for a continuance, as sufficient diligence had not been used to obtain the testimony of the absent witnesses; nor does it appear to us, in view of the evidence adduced on the trial, that said absent testimony is probably true.

III.   It was not error to allow the State to have the witness Davidson explain why he went to Addison's house where the defendant and others, and the stolen horses, were seen by him. Such explanation was proper and legitimate for the purpose of rebutting any inference that might arise against the witness because of his movements and associations on that occasion.

IV.   It was not error to refuse to permit the defendant to cross examine the witness Davidson with respect to a prosecution at one time pending against said witness for cattle theft. At least it was not such error as this court will revise, it not appearing that the trial court abused its discretion to the injury of the defendant's rights.   The extent and character of a cross examination is left largely to the discretion of the trial judge, and the exercise of such discretion will not ordinarily be revised by this court.   (Willson's Crim. Stats., sec. 2511.)

V.   We have examined carefully the charge of the court, in the light of the objections and exceptions made and reserved to it, and we are unable to perceive that it is erroneous in any particular, when viewed with reference to the facts proved on the trial.   The instruction explaining the rule as to circumstantial evidence is in the usual form, which has repeatedly been held sufficient.   The instructions relating to possession of recently stolen property, and to the evidence concerning the theft of another horse than Carter's are pertinent and applicable to the peculiar facts of this case, and, in our opinion, they embody the law of the case correctly.

The evidence sufficiently shows that the defendant acted together with other parties with respect to the stolen horses.   He was seen in the personal and exclusive possession of one of the horses, recently after the theft, and was using the same as his own property.   He was in company with the party who had possession at the same time of the other horse, and left the county with such party, and was afterward seen in distant counties with said parties and said horses.   There is other evi-

dence in the case besides possession of the stolen horses tending strongly to show defendant's guilt of the theft of both horses, acting together with other parties. When the witness Davidson and another person found the parties and the horses, said parties fled, and they did not stop until they ascertained that Davidson and his companion were their acquaintances and supposed friends. They did not remain in, or allow themselves to be seen in, the neighborhood of the theft, but immediately left that county and went to a distant county with the horses, and changed the brands on said horses. These being the facts of the case, there is, in our opinion, no error in the charge of the court, and the special instructions requested by the defendant were properly refused.

We have considered other questions presented in the record, but, deeming them to be unimportant and without substantial merit, we do not discuss them. We have discovered no error in the conviction, and the judgment is affirmed.

*Affirmed.*

Opinion delivered October 13, 1888.