## PEOPLE *v.* KINNEY.

1. STATUTES—REPEAL BY IMPLICATION—FALSE PRETENSES.

   Section 9353, 2 How. Stat., which provides for the punishment of any person fraudulently obtaining the signature of another to any paper writing with intent to cheat and defraud, was not repealed by Act No. 234, Pub. Acts 1895, amendatory of section 9161, 2 How. Stat., prescribing the punishment for similar acts committed with like intent.

2. CRIMINAL LAW—FALSE PRETENSES—SUFFICIENCY OF INFORMATION.

   An information for fraudulently obtaining a signature to a promissory note is not defective in failing to allege that the note was delivered to the respondent.

3. SAME—CONCLUSIONS FROM FACTS ALLEGED.

   An information for such offense, which sets up facts necessarily leading to the single and inevitable conclusion that the note was signed in consideration of the alleged false representations, is not invalid because it does not expressly aver such to have been the fact.

Exceptions before judgment from Kent; Adsit, J. Submitted April 30, 1896. Decided July 8, 1896.

Arthur B. Kinney was convicted of fraudulently obtaining a signature to a promissory note. Affirmed.

110 MICH.—7.

*Nathan P. Allen* (*Edwin St. George Rogers* and *Birney Hoyt*, of counsel), for appellant.

*Fred A. Maynard*, Attorney General, and *Alfred Wolcott*, Prosecuting Attorney, for the people.

HOOKER, J. The defendant was convicted upon a charge of fraudulently obtaining the signature of the complainant to a promissory note, contrary to the provisions of section 9353, 2 How. Stat., which is as follows:

"*The People of the State of Michigan enact*, That any person or persons who shall, by representing that he is the agent of any person, company, firm, or corporation, or by any other means, fraudulently obtain the signature of any person or persons, with the intent to cheat and defraud such person or persons, to any promissory note, bill of exchange, duebill, order, contract, or any paper writing whatever, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be imprisoned in the state prison not exceeding ten years, or in the county jail not more than one year, or by a fine not exceeding one thousand dollars, or both, in the discretion of the court."

This section became a law August 30, 1879, having been approved May 27th. Four days earlier an amendment was made to section 39 of chapter 154 of the Revised Statutes of 1846, as amended by Act No. 164 of the Laws of 1867, which last amendment also took effect August 30, 1879. As amended in 1867, this statute was as follows:

"Every person who, with intent to defraud or cheat another, shall designedly, by color of any false token or writing, or by any other false pretense, cause any person to grant, convey, assign, demise, lease, or mortgage any land or interest in land, or obtain the signature of any person to any written instrument the making whereof would be punishable as forgery, or obtain from any person any money, personal property, or valuable thing, shall be punished by imprisonment in the state prison not more than ten years, or by fine not exceeding five hundred dollars and imprisonment in the county jail not more than one year."

The amendment of 1879 consisted of the addition of the following, before the penalty, to the act as passed in 1867, viz.:

"Or, by means of any false weights or measures, obtain a larger amount or quantity of property than was bargained for, or, by means of any false weights or measures, sell or dispose of a less amount or quantity of property than was bargained for, shall be punished by imprisonment," etc.

These two sections, 9161 and 9353, were passed at the same session, and have stood upon the statute book since, without change until 1895, when the following change was made in the penalty of section 9161, viz.:

"If such land or interest in land, money, personal property, valuable thing, larger amount obtained, or less amount disposed of, shall be of the value of twenty-five dollars or less, shall be punished by a fine not exceeding one hundred dollars or imprisonment in the county jail not exceeding three months; and if such land or interest in land, money, personal property, valuable thing, larger amount obtained, or less amount disposed of, shall be of the value of more than twenty-five dollars, such person shall be punished by imprisonment in the state prison not more than ten years, or by fine not exceeding five hundred dollars and imprisonment in the county jail not more than one year." Act No. 234; Pub. Acts 1895.

This act was approved May 31, 1895.

The offense of which the defendant stands convicted is alleged to have been committed in January, 1895, and therefore was previous to the amendment. Section 9213, 2 How. Stat., provides that the false making of a promissory note shall be forgery. It is urged upon behalf of the respondent that sections 9161 and 9353 cover the same ground, and that the amendment of 1895 repealed both sections, and, as it contained no saving clause, the charge against the defendant cannot be prosecuted.

The amended statute (section 9161) was passed four days earlier than section 9353. Section 9353 is broader and more comprehensive than section 9161 as to writings, in that,

while the latter covers only such writings as may be made the subject of the offense of forgery, and applies only to cases of procurement by false token, writing, or other false pretense, the former covers all paper writings, and extends to any and all kinds of fraudulent procurement. On the other hand, section 9353 shows no evidence of a design to cover the fraudulent procurement of other kinds of property. It is evident that the legislature did not intend to repeal section 9161 as to the other classes of property mentioned, and, to sustain the defendant's contention, we must hold that the enactment of section 9353 did not repeal that portion of section 9161 applying to written instruments, because, if it had that effect, the subsequent amendment—*i. e.*, that of 1895—would not affect this case, inasmuch as it does not purport to amend anything but section 9161, and manifestly could not regenerate that part of the section that was dead through a previous repeal. If, however, section 9353 did not in any way affect section 9161, the question arises whether the amendment of 1895, which in terms deals only with section 9161, and only in relation to the penalty, should be held to apply to section 9353. To our minds, a sufficient reason why it should not be held to apply to section 9353 is that the amendment seems not to have been intended to apply to cases involving the procurement of signatures to writings, which, while mentioned in the body of the statute, are conspicuously absent in that portion of the act prescribing the penalty.

Counsel contend that the information filed in the case was insufficient, for the reason that it does not allege that the defendant obtained the note in question; in other words, it does not state that it was delivered to him, but only that he obtained the complainant's signature thereto. It is said that obtaining the property is essential to the offense commonly known as "false pretense," and we are cited to the case of *State* v. *McGinnis*, 71 Iowa, 685, in support of the doctrine. The Iowa statute (Code, § 4073) provided that—

"If any person, * * * by false pretense, * * * with intent to defraud, obtain from another money, goods, or other property, or so obtain the signature of any person to any written instrument the false making of which would be punishable as forgery, he shall be punished," etc.

The prosecuting officer contended there, as here, that the offense was complete when the signature was obtained; but the court said that—

"It will be observed that the statute provides, 'or so obtain the signature of any person.' This refers to what precedes such sentence, and that is in relation to obtaining property. If delivery or possession in one case is essential, it would seem to follow that it must be in the other. 'To obtain' means 'to get hold of, to get possession of, to acquire.' Now, the statute provides that the signature must be 'so obtained'—that is, it must be acquired or come into the possession of some person—by means of the false pretense, to the same extent as is necessary in order to constitute the offense when money or property is obtained."

If, as stated in the case last cited, "to obtain" means "to get hold of, to get possession of, to acquire," we see no necessity for an allegation of delivery of the note after the information has already stated that the offender has obtained (*i. e.*, got possession of or acquired) the signature to the note. The lawmakers evidently supposed the language used sufficient to imply possession acquired, and we think it sufficient to so allege it in the information.

In this connection we may discuss a further point upon the information, viz., whether it sufficiently connects the alleged fraudulent representations with the signature of the note. At this point it becomes necessary to detail some of the facts. The defendant is alleged to have called upon the complainant, claiming to be the physician and examiner of the Indianapolis Medical & Surgical Institute, — a concern which prescribed and furnished medicine for invalids at their homes,—and made a pre-

tended examination of complainant, and professed to know that he had consumption, kidney and liver disease, and that he could live but a few months without medical help, and that, if complainant would sign the note in question, he would cause said institute to send medicines that would cure him; that complainant believed this, and was induced by these representations to sign the note, payable to said institute. The alleged infirmity is that the information omits to state that this note was signed in consideration of the promise of such treatment and medicines to be furnished. This information is much fuller in its allegations than the cases cited in support of the point. In *Jones* v. *State*, 50 Ind. 474, the indictment alleged pretenses to the effect that the respondent was agent of a firm with power to contract, and exhibited a card, and that by means thereof he obtained from the complainant (who relied upon the representations) a note, etc. The same may be said substantially of *Cooke* v. *State*, 83 Ind. 402. *Enders* v. *People*, 20 Mich. 233, is open to a similar criticism. That case, however, mentions the subject of the false pretenses as "land that he was about to sell to the complainant." In the case before us, however, we find that a contract was tendered by the defendant, involving the note; that by means of this the complainant was induced to yield, and comply with the offer, whereby the defendant obtained the signature, and, as already said, the note. Here is a statement of fact that, if proved, would establish the contract in a court of justice, and "where an unequivocal statement leads immediately and of necessity to a single and inevitable conclusion, the omission to draw that conclusion expressly will not vitiate the pleading." *Evans* v. *People*, 12 Mich. 27.

The points discussed involve the more important legal questions presented by the case. We are, however, asked to pass upon innumerable assignments of error, and, in justice to the defendant, have felt constrained to examine them. Such examination reveals nothing

of interest to the profession, or of which the defendant can legally complain. Were we to discuss separately the 120 assignments of error, we should be obliged to reiterate many things that we have said in other cases, and express conclusions so patent that we are surprised that it should be deemed advisable to raise the questions.

The conviction is affirmed.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. LONG, C. J., did not sit.