ROBINSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 26, 1909.)

No. 2,877.

1. CONSPIRACY (§ 43*)—FEDERAL STATUTE—INDICTMENT.
   An indictment for conspiracy to use the mails to defraud, in violation of Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), considered, and *held* sufficient.
   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 96; Dec. Dig. § 43.*]

2. CRIMINAL LAW (§ 824*)—TRIAL—INSTRUCTIONS.
   The charge of the court in a criminal case as to the character of circumstantial evidence necessary to warrant a conviction *held* sufficient, in the absence of a specific request to charge in particular language.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1999; Dec. Dig. § 824.*]

3. CONSPIRACY (§ 37*)—FEDERAL STATUTE—CONSTRUCTION.
   Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), makes a conspiracy to commit an offense against the United States a distinct offense, and a defendant may be convicted thereunder, although the proof shows that the substantive offense to which the conspiracy related was in fact committed.
   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 68; Dec. Dig. § 37.*]

4. CRIMINAL LAW (§ 113*)—FEDERAL STATUTE—VENUE.
   A charge of conspiracy to commit an offense against the United States, under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), may be prosecuted in any district where an overt act was committed.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 232; Dec. Dig. § 113.*]

In Error to the District Court of the United States for the District of Minnesota.

C. D. O'Brien and R. D. O'Brien, for plaintiffs in error.
Charles C. Houpt, U. S. Atty., and E. S. Oakley, Asst. U. S. Atty.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. Robinson, Layne, and Holliday were convicted in the trial court of a conspiracy under section 5440, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3676), to commit the offense denounced by section 5480, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3696). To reverse the judgment rendered against them they sued out a writ of error from this court.

It is assigned as error that the trial court erred in denying a motion in arrest of judgment. .The ground of the motion in arrest was that the indictment did not charge a public offense against the laws of the United States. The only reason urged here in support of the motion in arrest is that the indictment does not by proper averment allege that the representations which defendants were to make in carrying out their scheme to defraud were to be false. Assuming, but not deciding, that such representations must be false, the language of the indictment does not bear out this claim. It is alleged therein that:

"All of which pretensions and representations so made and set forth were to be made for the purpose of persuading and inducing the persons unknown as aforesaid to send and intrust their money and funds to the said Edward A. Vaughan for investment in grains and stocks upon the representations so made and set forth in said circulars and letters, and that all moneys so sent by the persons unknown as aforesaid, and so received by said persons under the name of the said Edward A. Vaughan, be fraudulently converted to the personal use of them, the said Edward A. Vaughan, Henry F. Raymond, John Hogan, J. L. Layne, M. A. Gill, B. R. Hyman, and John Doe, and in no wise invested as promised and set forth in said circulars and representations."

In view of these allegations, how can it be urged that the representations and pretenses were not to be false? This point is without merit.

It is further assigned as error that the trial court refused to instruct the jury in regard to circumstantial evidence. Conceding, but not deciding, that it would have been error for the court to refuse to give to the jury a properly framed charge as to the degree of certainty which must exist in a juror's mind in order to convict upon circumstantial evidence, we do not think the record discloses any such refusal. At the close of the court's charge to the jury the following conversation occurred between the court and counsel for defendants:

"Mr. O'Brien: I ask your honor to instruct the jury, on the question of the principle of law applicable to circumstantial evidence, it must point solely to the hypothesis of guilt; that if it can be reconciled in any way with the innocence, that that is the difference between direct and circumstantial evidence.

"The Court: I think that my charge is sufficient.

"Mr. O'Brien: Your honor didn't say a word about circumstantial evidence.

"The Court: I indicated that a conspiracy could be proved by circumstantial evidence.

"Mr. O'Brien: But your honor didn't give the request which I asked this morning as to the circumstantial evidence—that it must point solely to the hypothesis of guilt.

"The Court: I think that is included in what I said with reference to the establishment of these facts beyond a reasonable doubt.

"The Court: I say here it is not necessary that the evidence should repel every fanciful theory, but it should be inconsistent with the idea of innocence.

"Mr. O'Brien: If that applies to circumstantial evidence, why, of course, the rule is that it must point solely to the hypothesis of guilt. I want to call your honor's attention—

"The Court: I think it must point solely to the hypothesis of guilt. I think that is correct; but I think I have carried the same idea here (referring to written portion of the charge)."

The court did say in its charge to the jury, in speaking of the degree of proof necessary to convict:

"But it should be inconsistent with the idea of innocence, and strong enough, as I have said, to satisfy the reason and conscience of the jury, so that they

will be fully satisfied and convinced to a moral certainty of the conclusion that they reach."

The court also, of course, instructed upon the question of reasonable doubt. It thus appears that there was no specific request to charge; hence nothing upon which an exception could be based. It appears by the conversation above quoted that the trial court was not put upon record as refusing any particular language requested by counsel. Moreover, we are satisfied that defendants suffered no prejudice from what occurred at the trial in relation to this matter.

It is again assigned as error that the court refused to instruct the jury to acquit the defendants, for the reason that the proof showed a completed offense under section 5480, and, therefore, the offense of conspiracy had become merged into that of using the mail to defraud. The crimes denounced by sections 5440 and 5480 are both misdemeanors as the law now stands, and the doctrine of merger does not apply. Berkowitz v. United States, 93 Fed. 452, 35 C. C. A. 379.

In answer to the criticism of counsel as to this mode of proceeding it is only necessary to quote the language of Justice Brewer in delivering the opinion of the Supreme Court in Clune v. United States, 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269, as follows:

"It is contended that a conspiracy to commit an offense cannot be punished more severely than the offense itself, and also that, when the principal offense is in fact committed, the mere conspiracy is merged in it. The language of the sections is plain and not open to doubt. A conspiracy to commit an offense is denounced as itself a separate offense, and the punishment therefor fixed by the statute, and we know of no lack of power in Congress to thus deal with a conspiracy. Whatever may be thought of the wisdom or propriety of a statute making a conspiracy to do an act punishable more severely than the doing of the act itself, it is a matter to be considered solely by the legislative body. Callan v. Wilson, 127 U. S. 540, 555, 8 Sup. Ct. 1301, 32 L. Ed. 223. The power exists to separate the conspiracy from the act itself and to affix distinct and independent penalties to each."

Again, this court has decided the question presented in this assignment in accordance with the case last cited. Thomas v. United States, 156 Fed. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720.

It is assigned as error that the trial court refused to instruct the jury at the request of counsel for the defendants as follows:

"That if the jury should find from the evidence in this case that there was a corrupt agreement between these defendants, or any of them, with anybody else, constituting a conspiracy under your honor's instruction in the charge, and if they further find that that agreement was made or entered into in the city of Cincinnati, state of Ohio, or the city of Chicago, state of Illinois, or both of those places, and that that agreement and understanding was complete and existed between the defendants and the parties at the time they came within the district of Minnesota, that then and in that case their verdict must be for the defendants."

There was testimony tending to show that the agreement constituting the conspiracy alleged in the indictment was entered into in Cincinnati and Chicago; but all the overt acts set out in the indictment were proven to have been committed in Minneapolis, Minn., and the evidence also showed that it was the intention of the conspirators to carry out their conspiracy at Minneapolis. The request of counsel was made, we suppose, in reliance on those provisions of the Consti-

tution of the United States which declare that in all criminal prose-
cutions the accused shall have the right to be tried by an impartial ju-
ry of the state and district wherein the crime shall have been commit-
ted.   Article 3, § 2; Amend., art. 6.

At common law the venue in conspiracy could be laid in any county
in which it could be proven that an overt act was done by any one of
the conspirators in furtherance of their common design.   1 Archbold's
Criminal Practice and Pleading (8th Ed.) p. 226.   Where a conspiracy
was formed at sea, and an overt act done in Middlesex county, it was
held that the venue was properly laid in that county.   The King v.
Bresac and Scott, 4 East, 164.   In the case of King v. Bowes and Oth-
ers, referred to in the above case, the conspirators were tried in Mid-
dlesex, though there was no proof of an actual conspiracy in that
county, and the acts and doings of some of them were wholly in other
counties.   In People v. Mather, 4 Wend. (N. Y.) 261, 21 Am. Dec. 122,
Marcy, J., in delivering the opinion of the court, said:

"I admit that it is the illegal agreement that constitutes the crime.   When
that is concluded the crime is perfect, and the conspirators may be convicted
if the crime can be proved.   No overt act need be shown or ever performed
to authorize a conviction.   If conspirators enter into the illegal agreement in
one county, the crime is perpetrated there, and they may be immediately pros-
ecuted; but the proceedings against them must be in that county.   If they
go into another county to execute their plans of mischief, and there commit
an overt act, they may be punished in the latter county without any evidence
of an express renewal of their agreement.   The law considers that wherever
they act there they renew, or perhaps, to speak more properly, they continue,
their agreement, and this agreement is renewed or continued as to all when-
ever any one of them does an act in furtherance of their common design.   In
this respect, conspiracy resembles treason in England, when directed against
the life of the king.   The crime consists in imagining the death of the king.
In contemplation of law, the crime is committed wherever the traitor is and
furnishes proof of his wicked intention by the exhibition of any overt act."

To the same effect are Commonwealth v. Gillespie, 7 Serg. & R. (Pa.)
469, 10 Am. Dec. 475; Noyes v. State, 41 N. J. Law, 418; Common-
wealth v. Corlies, 3 Brewst. (Pa.) 575.

If this was the law of venue in conspiracies at common law, where
proof of an overt act was not necessary to show a completed offense,
the same rule can be urged with much greater force under section
5440, Rev. St. U. S., as the offense described therein for all practical
purposes is not complete until an overt act is committed.

In Hyde v. Shine, 199 U. S. 62, 25 Sup. Ct. 760, 50 L. Ed. 90, it is
said:

"Granting that the gravamen of the offense is the conspiracy, and that at
common law it was neither necessary to aver nor prove an overt act (Rex v.
Gill, 2 B. & Ald. 204; Bannon v. United States, 156 U. S. 464, 468, 15 Sup. Ct.
467, 39 L. Ed. 494), an overt act is necessary under Rev. St. § 5440, to com-
plete the offense."

In the case of In re Palliser, 136 U. S. 266, 10 Sup. Ct. 1036, 34 L.
Ed. 514, it is said:

"When a crime is committed partly in one district and partly in another, it
must, in order to prevent an absolute failure of justice, be tried in either
district, or in that one which the Legislature may designate; and Congress
has accordingly provided that 'when any offense against the United States is
begun in one judicial district and completed in any other, it shall be deemed

to have been committed in either, and may be dealt with, inquired of, tried, determined and punished in either district, in the same manner and as if it had been actually and wholly committed therein.' Rev. St. § 731 (U. S. Comp. St. 1901, p. 585)."

This language is quoted with approval in Burton v. United States, 202 U. S. 388, 26 Sup. Ct. 702, 50 L. Ed. 1057.

It will be noticed that the Supreme Court, in quoting section 731, Rev. St. U. S., uses the word "district," instead of "circuit," as being, no doubt, the real intention of Congress. It seems clear, then, that whether we place reliance on the common law or on section 731, Rev. St., the venue of the offense was correctly laid in the district of Minnesota, and the evidence sustained the allegation of the indictment.

This disposes of the assignments of error argued; and, finding no error in the rulings of the trial court in reference thereto, its judgment is affirmed