# J. DAWSON MATHEWS v. STATE.

No. A-3326. Opinion Filed April 7, 1921.
Rehearing Denied June 13, 1921.
(198 Pac. 112.)

### (Syllabus.)

1. **Courts—Jurisdiction—Effect of Illegal Means in Getting Accused From Another State.** In a criminal case the courts of this state will not inquire as to whether the laws of some other state have been violated in transporting an accused person into the jurisdiction of this state. If the court lawfully acquires jurisdiction of the person after he is within reach of its processes, the means used to bring him there will not be a subject of inquiry.

2. **Evidence—Proof of Conspiracy not Alleged.** It is a general rule that upon the trial of one accused of a crime evidence is admissible to prove a conspiracy to commit the crime charged, although the conspiracy is not charged in the indictment. This is not permitted for the purpose of allowing a conviction for a crime not charged, but to lay a foundation for the admission of evidence.

3. **False Pretenses—Information—Sufficiency—False Pretense to Bank.** A statement contained in an information, to the effect that the false pretenses charged were made to a banking corporation, as distinguished from its officers and agents, is sufficient to give the accused the necessary information as to the scope and character of the crime charged. A corporation is an artificial person, made so by statute, and cannot act or be influenced except through its officers and agents.

4. **Same.** It is not necessary for the information to state that by reason of the false pretenses the bank bought the worthless commercial paper of which complaint is made. It makes no difference whether the bank parted with its money through a sale of the commercial paper, or whether it was hypothecated for that purpose. The gist of the offense is the procuring of the money, or something of value, by means of the false pretenses.

5. **Jury—Excusing Juror Before Examination—Discretion of Court.** The right of the accused in the selection of the jury is one of exclusion of incompetent jurors, and not one of inclusion of particular persons who are competent. No fixed rule can be applied to the numerous reasons why a juror may be excused from the regular panel before examination in the case, and whether a juror should be excused before being examined in any case rests in the sound discretion of the court, and the exercise of such discretion will not be disturbed unless it is shown that such discretion has been abused, to the actual prejudice of the complaining party.

6.    **Appeal and Error—Harmless Error—Examination of Jurors.**
In the examination of jurors, where no attempt is made to state
in advance what the instructions would be or what the facts
would disclose, it was not prejudicial error to permit the state
to ask certain prospective jurors whether, if they were convinc-
ed by the instructions of the court and the evidence beyond a
reasonable doubt of the guilt of the defendant, they would hesi-
tate to find the defendant guilty. The purpose of such ques-
tions was doubtless to ascertain whether the jurors would ac-
cept the instructions of the court as the law of the case.

7.    **Jury—Qualifications of Juror.** The mere fact that a prospective
juror is a depositor in the bank interested in the prosecution of
the defendant will not disqualify such juror, where it is not
shown that his business relations are such as might influence his
verdict or cause the bank to oppress him or place him at the
mercy of the bank.

8.    **Same.** Where a juror, from what he had heard or read, believed
that a fraud had been committed, but had no recollection or
opinion as to who had perpetrated the fraud, and had formed
and expressed no opinion as to the guilt of the de-
fendant, he is not disqualified by the mere fact of his belief that
some person, to him unknown, had committed the fraud.

9.    **Evidence—Hearsay.** Where it is claimed that a banking cor-
poration was systematically engaged in issuing fraudulent and
worthless commercial paper, the fact of the insolvency of such
corporation may be shown by statements and records of public
officers whose duty it was to inquire into and examine its fiscal
affairs, and this may be supplemented by reports of commercial
agencies, and by information obtained from bankers and others,
in the nature of hearsay evidence.

10.    **Courts—Jurisdiction—Formulation of Conspiracy in Another
State.** The fact that conspiracy is formulated in another state
and that the defendant, a co-conspirator, was not within this
state prior to the commission of the overt act of which com-
plaint is made, will not deprive the courts of this state of juris-
diction to try such defendant when later apprehended within its
territorial jurisdiction. Every person participating in an un-
lawful conspiracy is deemed to be a principal, and is punishable
as such, although he may not have been present or within the
jurisdiction of the court when the overt act was consummated.

11.    **Evidence—Conspiracy—Order of Evidence.** It is immaterial in
what order testimony predicated upon a conspiracy is introduced,
if the series of facts and circumstances shown in evidence
ultimately make a prima facie case of conspiracy. A conspiracy
may, and generally must, be proved by a number of independent
acts, conditions and circumstances tending to show an unlawful
common purpose of the conspirators.

12.   **False Pretenses—Caveat Emptor Inapplicable.** Where it appears that a trust company issues worthless commercial paper, denominated "Time Certificates," and these certificates were ingeniously designed and calculated to mislead and deceive persons of ordinary prudence, and where the circumstances surrounding the sale of one of these certificates were purposely arranged to deceive, the rule of caveat emptor will not apply.

Appeal from District Court, Payne County; John P. Hickam, Judge.

J. Dawson Mathews was convicted of obtaining money by false pretense and he appeals. Affirmed.

J. M. Springer and E. G. Wilson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.   On the 24th day of October, 1917, plaintiff in error, J. Dawson Mathews, hereinafter referred to as defendant, was convicted of the crime of obtaining money by false pretenses from the Oklahoma State Bank of Cushing on the 19th day of March, 1917, and was sentenced to confinement in the state penitentiary for a term of three years. From this judgment and sentence he appeals.

It appears from the evidence on the part of the state: That at and before the date of the offense charged one J. Greeley Jones was operating a purported banking institution in Houston, Tex., known as the Commonwealth Trust Company, with a reported capital stock of $250,000; that the defendant, for some time prior to the alleged offense, appeared to be in some way interested in this trust company, and spent much of his time at its offices, and advised and directed some of its business transactions; that the defendant was one of the principal customers of this concern, in buying and disposing of its worthless securities in the form of "time certificates," purchased in the name of J. A. Brown, for defendant's own benefit and profit, between the 15th day of February and the

5th day of March, 1917, of the total amount of $175,000; that the defendant was a man of very limited means and resources, and that he obtained these certificates by exchanging for them oil stocks that were worthless, and known by him at the time to be worthless.

That the place of business of this Commonwealth Trust Company was in two rear rooms on the fourth floor of the Beatty Building in Houston, Tex., that the office force of the institution consisted of a bookkeeper, who also exercised the functions of cashier, teller, and stenographer; that the concern had no assets of any value, excepting the office furniture and fixtures of the probable value of $300.

That the defendant procured these time certificates—presumably and ostensibly certificates of deposit—to be issued to J. A. Brown, a fictitous person not in being; that the defendant assumed to act for J. A. Brown under a power of attorney executed in his favor in 1914, and defendant, conspiring together with others, indorsed these time certificates to whoever could be induced to buy, and, among others, sold a certificate in the amount of $5,000, due in six months from date, to the State Bank of Cushing, Okla., on March 19, 1917.

That these time certificates were without value, and that the trust company was wholly insolvent, and that the scheme and plan of the defendant and his confederates in selling these time certificates to innocent purchasers amounted to a mere confidence game, by means of which unsuspecting banks and others were fleeced out of large sums of money, in the belief that they were purchasing time certificates of deposit issued by a reputable, solvent banking institution.

That the defendant, at different times before and after the alleged offense, caused a number of these time certificates to be sent by express to G. C. Wisdom and others in Oklahoma City; that on the 15th day of March, 1917, G. C. Wisdom and

Charles H. Garnett appeared at the Oklahoma State Bank at Cushing, and represented to the officers of the bank that they were contemplating closing a transaction of the sale and purchase of an oil lease, and that they had a certificate of deposit for the sum of $5,000, issued by the Commonwealth Trust Company of Houston, Tex., to J. A. Brown and indorsed by him to G. C. Wisdom, and that they desired to cash the same, representing to the bank that the certificate of deposit was regular, and that the Commonwealth Trust Company was a solvent, going concern, and that the indorsement and transfer were regular and valid.

The bank at Cushing did not cash this certificate on this day, but wrote a letter to the Commonwealth Trust Company, inquiring about its validity. In reply the trust company wrote to the bank that the certificate would be good if it bore the indorsement of J. A. Brown, and that the indorsement of Mr. Wisdom would be the only transfer necessary to convey good title to the bank; that the certificate and the indorsement of J. A. Brown were both genuine; that they did not care to discount their paper nor to anticipate payment at that time. Upon the strength of the representations made by Wisdom and Garnett and the information received in the letter from the trust company, the bank had the time certificate indorsed and transferred to them by Wisdom and Garnett, and paid to them for the certificate of deposit the sum of $4,750, believing that the certificate was valid, and that the trust company was a solvent, going concern.

The testimony shows that at the request of the Attorney General of the State of Texas a bank examiner made an investigation of the affairs of this trust company, and found that it had no assets of any value, and that the affairs of this trust company were a little later placed in the hands of a receiver, and that the receiver could find no assets sufficient to pay the cost of the receivership.

Defendant admits that he purchased these time certificates with a small amount of cash, and the assignment to the trust company of certificates of stock of the Monte Carlo Oil Refining Company. Defendant claims that in good faith he sold these time certificates so procured from the trust company to Wisdom, and to any others who would buy, for from 7 to 20 per cent. of the amounts named in the respective certificates, but that he had no connection with nor interest in their disposal by those who purchased from him, and was not acting in concert with Wisdom or others; that he had no connection with nor interest in the transfer of the particular certificate bought by the Cushing bank from Wisdom and Garnett; that at that time he was not in Oklahoma, and that he had not been in Oklahoma for years previous; that his connection with this and other like certificates ended as soon as he parted with such certificates and received the money for them to the persons to whom they were sold; that previous to these transactions he was engaged in selling and dealing in stocks and securities for J. A. Brown, under a power of attorney issued in 1914; and no showing was made that he had ever had an accounting or settlement with Brown; that Brown was a man of upwards of 70 years of age, occupying a rented farm in Texas; that he had not heard from him for months or years, but, so far as he knew, he was still living.

The evidence shows that this defendant was arrested in Houston, Tex., and, without a requisition, was forced to come to Oklahoma under arrest, after which he was informed against, tried, and convicted in this case.

A more complete recitation of the facts brought out in evidence would make an interesting and entertaining story, but would serve no useful purpose as a precedent to guide lawyers and judges in the trial of future cases. Suffice is to say that from an examination of the entire testimony and the

similarity of names and methods used by the parties J. Greely Jones and J. Dawson Mathews were emulating the example and perhaps surpassing the manipulations in high finance of J. Rufus Wallingford of fiction.

In his brief the defendant urges 12 assignments of error, as follows:

(1) The court below erred in overruling the motion of the defendant to quash the information.

(2) The court below erred in overruling the demurrer of the defendant to the information.

(3) The court below erred in discharging and releasing jurors without just cause, over the objection of the defendant, and without an examination of such jurors in open court.

(4) The court below erred in permitting the state to commit the jurors on their voir dire to the theory that the instructions of the court should be considered by the jury as having probative force, in that they were requested to say, in answer to questions asked by the state, that if they were convinced by the instructions and the evidence beyond a reasonable doubt of the guilt of the defendant they would not hesitate to find him guilty.

(5) The court below erred in permitting improper, incompetent, irrelevant, hearsay, and illegal evidence in behalf of the state, over the objections of the defendant.

(6) The court below erred in overruling the challenge of the defendant to jurors A. H. Ahrberg and A. M. Greiner and Dalrymple.

(7) The court below erred in its instructions to the jury.

(8) The court below erred in refusing to give proper instructions to the jury, which were requested in writing by the defendant.

(9) The court below erred in refusing to direct a verdict in favor of the defendant.

(10) The verdict of the jury and the judgment of the court are not supported by the evidence, and are contrary to the evidence.

(11) Prejudicial errors of law occurred at the trial, and were duly excepted to at the time by the defendant.

(12) The court below erred in overruling the motion of the defendant for a new trial.

Under the first assignment of error counsel for defendant contends that the court had no jurisdiction of the defendant, for the reason that he was brought into this state without his consent, by force and without process of extradition. In support of this contention, defendant in his brief refers to section 29, article 2, of our state Constitution, providing that—

"No person shall be transported out of the state for any offense committed within the state, nor shall any person be transported out of the state for any purpose, without his consent, except by due process of law; but nothing in this provision shall prevent the operation of extradition laws, or the transporting of persons sentenced for crime, to other states for the purpose of incarceration."

Defendant claims that, in the absence of proof, there is a presumption that the Constitution and laws of the state of Texas are the same as in this state. Assuming that this is true, in a criminal case the courts of this state will not inquire as to whether the laws of some other state have been violated in transporting an accused person into the jurisdiction of this state; and, if the court lawfully acquired jurisdiction of a person after he is within the reach of its process, the means used to bring him there will not be a subject of inquiry. Ex parte Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103;

State v. May, 57 Kan. 428, 46 Pac. 709; Brooklin v. State, 26 Tex. App. 121, 9 S. W. 735; Ex parte Davis, 51 Tex. Cr. R. 608, 103 S. W. 891, 12 L. R. A. (N. S.) 225, 14 Ann. Cas. 522, and note; Commonwealth v. Ramunno, 219 Pa. 204, 68 Atl. 184, 14 L. R. A. (N. S.) 209, 123 Am. St. Rep. 653, 12 Ann. Cas. 818; Pettibone v. Nicholi, 203 U. S. 192, 27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047.

We do not mean to be understood as approving the practice of detectives or officers of the law in kidnapping or removing a person accused of crime from one jurisdiction to another without due process of law. A person so transported has his remedies, and may obtain redress in the jurisdiction where his rights and liberty were violated.

Second. The defendant urges that the court erred in overruling the demurrer of the defendant to the information, for the reason that the information in this case charges the offense of obtaining money by false pretenses and conspiracy. The information was in two counts, the first charging the crime of false pretense, and the second count charging the same offense, but pleading some of the evidence tending to show that the defendants had conspired and confederated to commit the offense, and pursuant to that conspiracy or confederation did commit the crime. Both counts charge the commission of the same offense, viz., false pretense, but the second count contains allegations of a conspiracy leading up to the commission of the crime, and the allegations may be regarded as surplusage only. The state elected to stand upon the first count, but that did not deprive the state of the right to show that a conspiracy did exist, culminating in the commission of the crime charged.

In order to connect the defendant with the crime of false pretense, under the circumstances in this case, and in order to show the intent and purpose of the persons interested in

the sale of these time certificates, it was permissible to show that a conspiracy existed between them to sell these worthless certificates to innocent parties. It is a general rule that upon the trial of one accused of a crime evidence is admissible to prove a conspiracy to commit the crime charged, although the conspiracy is not charged in the indictment. This is not permitted for the purpose of allowing a conviction of a crime not charged, but to lay a foundation for the admission of evidence. Irvin v. State, 11 Okla. Cr. 301, 146 Pac. 453; 5 R. C. L. 1087, 1088; State v. Ruck, 194 Mo. 416, 92 S. W. 706, 5 Ann. Cas. 976, and note; State v. Ryan, 47 Or. 338, 82 Pac. 703, 1 L. R. A. (N. S.) 862; Spies v. People, 122 Ill. 1-12, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320, and note.

It has been uniformly held by the courts of this state and of other states that testimony tending to show the commission of the crime charged is not inadmissible because it also discloses the commission of another and different crime. Irvin v. State, supra, and cases therein cited.

It is further insisted that the information is defective and insufficient because it is alleged therein that the false pretenses were made to the Oklahoma State Bank at Cushing, as distinguished from its officers, and that the bank relied thereon and was deceived thereby, and by reason thereof parted with its money. It is true that a banking corporation in an artificial person, but section 2929, Rev. Laws 1910, provides that the word "person" includes corporations. A corporation cannot act in a business capacity except through its officers and agents. We think the language of the information, in this regard, sufficiently gave the accused the necessary information of the scope and character of the crime charged, and that the naming of the officer to whom the false pretenses were made was not necessary State v. Turley, 142 Mo. 403, 44 S. W. 267; State v. Hulder, 78 Minn. 524, 81 N. W. 532; Roberts v. People, 9 Colo. 458, 13 Pac. 630.

The defendant urges further that the information is defective for the reason that it does not set out specifically that the bank bought this particular time certificate. The correct rule applying to this part of the information, supported by abundant authority, is stated in 19 Cyc. 430, as follows:

"No particular form of words is necessary; allegations that 'by means of the false pretense' or 'relying on the false pretense,' or the like, is sufficient where it is apparent that the delivery of the property was the natural result of the pretense alleged. The same general rule applies when the false pretense used is a token."

It makes no difference whether the money was received from the sale of this certificate, or whether it was pledged or hypothecated for that purpose. The gist of the offense is the procuring of money or something of value by means of the false pretense. State v. Feeback, 3 Okla. Cr. 508, 107 Pac. 442; Teague v. State, 13 Okla. Cr. 270, 163 Pac. 954; State v. Boon, 49 N. C. 463; Commonwealth v. Lincoln, 93 Mass. (11 Allen) 233; Ter. v. Underwood, 8 Mont. 131, 19 Pac. 398; People v. Luttermoser, 122 Mich. 562, 81 N. W. 565; People v. Kinney, 110 Mich. 97, 67 N. W. 1089; People v. Haas, 28 Cal. App. 182, 151 Pac. 672.

Third. In the third specification of error the defendant complains that the court excused two jurors, Mr. Dunn and Mr. Wheeler, from the regular panel before examination in this case. Generally the right of the accused in the selection of the jury is one of exclusion of incompetent jurors, and not one of inclusion of particular persons who are competent. No fixed rule can be applied to the numerous reasons why a juror should be excused; and whether a juror should be excused before being examined in any case rests in the sound discretion of the court, and the exercise of such discretion will not be disturbed unless it is shown that such discretion

has been abused, to the actual prejudice of the complaining party.     Beatty v. State, 5 Okla. Cr. 105, 113 Pac. 237; Omaha So. Ry. v. Beeson, 36 Neb. 361, 54 N. W. 557; 24 Cyc. 26.

Fourth.   It is claimed by the defendant that the court erred in permitting the state to commit certain jurors to the theory that the instructions of the court should be considered by them as having probative force, by permitting the state to propound to them questions to the effect that if they were convinced by the instructions of the court and the evidence beyond a reasonable doubt of the guilt of the defendant, whether they would hesitate to find the defendant guilty. The purpose of these questions was to ascertain from the jurors whether or not they would accept the instructions of the court as the law of the case.   No attempt was made to state in advance  what the instructions would be or what the facts would be, so as to pledge the jurors in advance to render a verdict  for the state on a given state of law and fact. These questions, fairly interpreted, did not eliminate from the consideration of the jurors questions of fact that might not be touched upon in the instructions.

Fifth.   Complaint is made that the court below erred in overruling the challenge of the defendant to Jurors A. H. Ahrberg, Greiner and Dalrymple.   Juror Dalrymple said that he was a depositor in the Oklahoma State Bank at Cushing, the injured party.   The record shows that this juror was in other respects qualified.   The mere fact that he was a depositor in this bank did not disqualify him, where it was not shown that his business relations were such as might influence his verdict or cause the bank to oppress him or place him at the mercy of the bank.   Thompson v. Douglass, 35 W. Va. 337, 13 S. E. 1015; Kennedy v. Holladay, 105 Mo. 24, 16 S. W. 688.

Jurors Ahrberg and Greiner both stated that from what they had heard and read in the newspapers they had formed an opinion that a fraud had been committed, but that they had no recollection or opinion as to whether this defendant was implicated in the commission of such fraud; that they had no opinion as to who was responsible for the commission of the crime charged; that they never had had, and did not then have, any opinion as to the guilt or innocence of the defendant.

An opinion must be of such a fixed character as will overcome the presumption of innocence of the accused, and the fact that, a prospective juror has an opinion upon some feature of the case that will require some evidence to remove will not necessarily disqualify him. An opinion must always be one of degree, and it is for the court to determine whether the opinion entertained is of that fixed or permanent character which disqualifies him from coming to the case in a fair and impartial frame of mind, unaffected by prejudice or favor towards the accused. To render a juror incompetent on the ground of his having an impression or an opinion upon some issue in the case, it must appear that he entertains a fixed and settled conviction of the guilt or innocence of the defendant, or that he has expressed such a conviction. These two jurors had never formed nor expressed an opinion as to the guilt or innocence of the defendant in this case; from what they had heard or read they merely believed that a fraud had been committed, but had no recollection or opinion as to who had perpetrated the fraud. It has been held by this court that a mere impression, from reading the newspapers, that a tragedy had occurred is no disqualification of a juror. Scribner v. State, 3 Okla. Cr. 601, 108 Pac. 422, 35 L. R. A. (N. S.) 1014, note; Turner v. State, 4 Okla. Cr. 164, 111 Pac. 988; Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719.

In a homicide case an opinion gained from the newspapers that the accused had killed the deceased, but not as to his guilt, is not disqualifying when the only issue in the case is on self-defense.    State v. Gould, 40 Kan. 258, 19 Pac. 739; State v. Sorter, 52 Kan. 531, 34 Pac. 1036; State v. Morrison, 67 Kan. 144, 72 Pac. 554.

Where jurors, from what they had heard and read, had formed an opinion which would take evidence to remove, as to the fact of crime, but not as to who was the criminal, it was held no error to accept them.    State v. Haworth, 24 Utah, 398, 68 Pac. 155.

Sixth.    Wide latitude is permissible in the examination of witnesses to show a conspiracy to commit a crime.    Without here analyzing the testimony claimed by the defendant to be incompetent and inadmissible, we find no prejudicial error in the admission of the testimony of the receiver and the special bank examiner of the state of Texas, to the effect that this trust company had no assets, and that its commercial paper was worthless.    The information gathered by these officers was derived from an examination of the books and records of the trust company, supplemented by information obtained from banks and commercial agencies, and the latter was not incompetent on account of being hearsay evidence.    It has been frequently held that the question of the solvency of an individual or of a corporation, in cases of this character involving fraud, may be established by hearsay evidence.    Greenleaf on Evidence (16th Ed.) vol. 1, § 190b; Jones on Evidence (2d Ed.) § 206; Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022; 8 R. C. L. 633; 10 R. C. L. 962.

The claim made by defendant that certain evidence was inadmissible until after proof of a conspiracy had been established is not correct.    A conspiracy to defraud is necessarily

or usually made up of a series of facts and circumstances, and it is sufficient if the facts and circumstances shown in evidence are finally connected so as to make a prima facie case of conspiracy. If that is ultimately done, it is then immaterial in what order testimony predicated upon a conspiracy is introduced.

A conspiracy, leading up to the commission of the crime charged need not be established by direct evidence, but may and generally must be proved by a number of independent acts, conditions, and circumstances. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful common purpose.

It is not necessary to prove that the conspirators came together and actually agreed to pursue their purpose by common means, one performing one part and another another. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to make him guilty. It is not even necessary that a person, to be criminally liable, should be acquainted with the others engaged in the conspiracy, though to hold one liable as a participant it must be shown that he did some act or made some agreement showing his intention to commit the crime; and one who joins the conspiracy after its formation is liable as a conspirator just as much as those with whom the conspiracy originated. 1 R. C. L. 133; 5 R. C. L. 1088, 1063; section 2104, R. L. 1910; Spies v. People, 122 Ill. 1-12, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320; Robinson v. U. S., 172 Fed. 105, 96 C. C. A. 307; U. S. v. Newton (D. C.) 52 Fed. 275; Hyde v. Shine, 199 U. S. 62, 25 Sup. Ct. 760, 50 L. Ed. 90; Pettibone v. Nichols, 203 U. S. 192, 27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047.

It therefore follows that if J. Dawson Mathews, collusive-

ly with G. C. Wisdom and others, placed these worthless time certificates in circulation, and, directly or indirectly, sent certain of them, by express or otherwise, to Wisdom for the purpose of passing them on to innocent purchasers, and both being cognizant of the fraudulent character of the paper, J. Dawson Mathews became criminally liable for the overt acts of Wisdom and any other person entering into the conspiracy in furtherance of the original plan.

Seventh. The defendant insists at great length that the court erred in his instructions to the jury and in his refusal to give the instructions offered by the defendant. To analyze these instructions in detail would be, for the most part, a repetition of what we have heretofore stated in this opinion. We have carefully examined the instructions given by the court, and we hold that, taken as a whole, they fairly state the law applicable to the evidence before the jury. A false pretense may be made either expressly or by implication and the Oklahoma State Bank at Cushing had a right to assume that this time certificate of deposit, or promissory note, or whatever it should have been called, was issued in due course by a legitimate bank or trust company in good faith. Where it is shown, as in this case, that these certificates were worthless, and were ingeniously designed and calculated to mislead and deceive the purchaser, and would deceive a person of ordinary prudence, and the circumstances surrounding the sale were purposely arranged to deceive, the rule of caveat emptor will not apply. 19 Cyc 401--403; State v. McDonald, 59 Kan. 241, 52 Pac. 453; Commonwealth v. Stone, 4 Metc. (Mass.) 43; People v. Luttermoser, 122 Mich. 562, 81 N. W. 565; State v. Southall, 77 Minn. 297, 79 N. W. 1007; 1 McClain, Crim. Law, 674; 11 R. C. L. 838.

Eighth. Complaint is made by the defendant of the alleged errors in the admission of improper testimony, of conduct of counsel for the state, and of side remarks made by one

of the witnesses, but in the opinion of this court, after a careful examination of the entire record, none of the things so complained of amounts to judicial error.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.