**P. H. MOORE, aka Hank Moore,**
**Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant**
**in Error.**

**No. A–13197.**

Court of Criminal Appeals of Oklahoma.

Sept. 5, 1962.

As Corrected Sept. 19, 1962.

John E. Green, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

P. H. Moore, the Plaintiff in Error, hereinafter referred to as the defendant, was charged by Information in the Court of Common Pleas, Oklahoma County with the crime of Paying for Labor and Materials by Means and Use of a Bogus Check. He was tried before a jury, found guilty and sentenced to pay a fine of $300.00 and to serve 60 days in the county jail. The charging part of the Information read as follows:

"That the defendant did then and there wilfully, unlawfully and wrongfully commit the crime of PAYING FOR LABOR AND MATERIALS BY MEANS AND USE OF A FALSE AND BOGUS CHECK in the manner and form as follows: to wit:

That is to say, the said defendant, in the County and State aforesaid, and

on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully and wrongfully, with intent to cheat, wrong, and defraud, obtain from James C. Burge, co-owner, doing business as, CONVENTION DECORATING SERVICE, authorized and licensed to do business in the State of Oklahoma, Labor and materials, by means and use of a false and bogus check, which said check is in words and figures as follows, to wit:"

This Information was predicated upon Title 21 O.S.A. § 1627, which reads as follows:

"Every person who, with intent to cheat or defraud, shall obtain or attempt to obtain from any person any labor or personal services, or the postponement of actual payment due for labor or personal services theretofore performed, by means or use of any false or bogus written, printed or engraved order directing the payment of money, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment."

The facts are that James C. Burge was co-owner of the Convention Decorating Service. The firm was contracted by Mr. P. H. Moore about erecting a booth for display at a Home Show to be held at Bryant Center in Oklahoma City, Oklahoma. Mr. Burge sent Mr. Hickart, an employee, out to erect the Booth for Mr. Moore on October 23, 1960. After he had completed the job he presented Mr. Moore with a bill from the company for services rendered. Mr. Moore didn't pay for the service the first 2 or 3 times it was presented. Hickart testified as follows:

"Q. What were your instructions from your employer as to when you placed these materials out at this particular place?

"A. My instructions were to go out and set up the show for the man and check with him to see if that was what he wanted and everything.

"Q. What instructions did he have about collecting?

"A. He sent me out there twice to try to collect off of the man. You could never find him. He was always going to be there. One time when he sent me out there he told me to tell the man he wanted the money; that their terms are cash. He either wanted the money or he wanted the booths taken down.

"Q. Did you go out with the instructions to either get the money or take the booths down?

"A. Yes:

"Q. Were you instructed to take a draft or check or anything other than money?

"A. Yes.

"Q. Who instructed you to take something other than money?

"A. Mr. Burge.

"Q. Did you have any conversation with Mr. Moore at the time that you received this purported instrument?

"A. He told me one time that he didn't have it there but he would bring the check the next day.

"Q. Did you have any other conversation with him?

"A. I probably did; I don't remember now.

"Q. Did you tell him that you had to get your money or else take the exhibit down?

"A. Yes sir, I did.

"Q. Did you suggest any way he was to give you some type of something of value before or else you would take the booths down?

"A. He told me he would have the check out there the next day for me, which I was out there the next day and

he was not there. He finally called in and he told me there at the Center that he would be late and I waited around two hours and he never showed up.

"Q. Did you go back the next day to receive the instrument?

"A. Yes.

"Q. Did you have any conversation with him then, at the time this particular instrument was pledged?

"A. I know I asked him for the money.

"Q. Did you suggest to him that if he didn't have the money that he was to give you a check of some sort?

"A. He already had it and he gave it to me."

The check to which witness referred was made out on a customers draft but failing to list any bank upon which it was drawn. In the place where the bank upon which the draft is drawn is ordinarily listed, there appeared the word "Booths". The check appears in the following form:

"FIRST STATE BANK AND TRUST COMPANY

Oklahoma City, Oklahoma      October 28, 1960

Pay to the
Order of      Convention Decorating Service                          $  322.00
THE SUM   * *    322 dols 00 cts.                    Dollars
For value received and charge the same to account of
THE PRESS with exchange

TO:    Booths                                      /s/  (P. H. Moore)
                                                   Jeanne Redd"

The check was turned down by the bank for the reason "No Account".

Mr. Burge had several conversations with Moore about the check being dishonored and he promised to take the check up on numerous occasions but never did. At one time, the defendant offered to give Mr. Burge an air-conditioner as part payment. It was not clear and Burge refused to accept it. He offered to settle the claim for $200.00, which Moore refused to do.

The check was turned over to the County Attorney and charges filed March 28, 1961.

■■■ The defendant argues that the Information does not state a cause of action. We do not agree. Obtaining labor or services with intent to defraud by payment of a bogus check constitutes a crime under Title 21 O.S.A. § 1627. However, we do agree that the evidence did not prove the crime alleged in the Information. The check was not given as an inducement to obtain the labor or services as the labor had already been performed and the services rendered at the time the check was given. Defendant acquired nothing by the giving of the Bogus Check but a postponement of payment for labor and services already performed.

It was held in Helsey v. State, 18 Okl.Cr. 98, 193 P. 50, 17 A.L.R. 197:

"[That] in order to sustain the conviction for obtaining money under false pretense, it must be shown that there was a false representation as to an existing fact or past event, relied upon by the party defrauded as true, and such false representation must be the motive cause which induced the owner to part with his property."

The same would be true here. The check could not have caused the prosecuting witness to part with the labor or service as it was given after the labor and services were performed. There was a variance between the charge as alleged and the proof.

■ Defendant should have been charged under the second portion of Title 21 O.S. A. § 1627, which reads:

"or the postponement of actual payment due for labor or personal service theretofore performed, by means or use of any false or bogus written, printed or engraved order directing payment of money."

■■ Defendant further claims that the check was not negotiable because it was written upon a customers draft form. We deem this argument to be without merit. A check given by a depositor upon a bank is a mere direction to the bank to pay a certain sum of money to the person named therein. The instrument in question had all the elements necessary to constitute such direction. The State produced Mr. Luther Harrel, Vice-President and Cashier of the First State Bank, who testified that many people wrote checks on a form designated as a customers draft, but if they had an account in the bank, they were honored, and that he would have honored defendant's, if he had an account; that he honored checks written on draft forms every day. If defendant had made a mistake about the bank the check was drawn on, he could easily have changed it, and this case would not be before us.

The next contention of error the defendant complains of came after the State had rested. Defendant did not take the stand, but called up Rev. Edwards as a character witness. The following transpired:

"MR. GREEN: We call the Reverend Edwards now.

"THE COURT: You have a right to call him.

"MR. BARTON: If the Court please, I would like to make a record. He is calling a man referred to as a reverend for the purpose of putting the character of Mr. Hank Moore in issue. I object to it until Mr. Hank Moore is put on the stand and his character is attacked.

"THE COURT: I will sustain the objection and allow exceptions.

"MR. GREEN: Let the record show that the defendant comes now and moves for a mistrial for the reason that the defendant was denied the right to present his case as he deemed it to be presented.

"THE COURT: Overruled and allow exceptions."

■■ The Court erred in refusing defendant the right to put on evidence as to his good reputation and character. Proving the good reputation and character of defendant is not contingent upon him taking the witness stand. A person's good reputation must be proven by some one other than himself. The State can always cross-examine or present witness to refute the testimony. To refuse defendant this right constitutes error.

It is the considered opinion of this Court that for the foregoing reasons the judgment and sentence of the trial court should be reversed and remanded and retried in accordance with this decision.

BRETT and BUSSEY, JJ., concur.